# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., | ) | |
| | ) | |
| Appellant, | ) | Case No. 15-cv-2528 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| ERIC ISAACSON and | ) | |
| KIMBERLY ISAACSON, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is on appeal from the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case No. 13-20227. In an oral ruling on March 11, 2015, the Bankruptcy Court denied BMO Harris Bank, N.A.'s motion to dismiss the Debtors' Chapter 7 bankruptcy petition pursuant to 11 U.S.C. § 707(a). Before the Court is BMO Harris Bank, N.A.'s appeal of that decision. [See 1.] For the reasons set forth below, the Bankruptcy Court's decision is vacated and the case is remanded for reconsideration in accordance with this order and with the Seventh Circuit's recent opinion in *In re Schwartz*, 799 F.3d 760 (7th Cir. 2015).

## I.  Background

### A.  Procedural History

In 2005, Debtors Eric and Kimberly Isaacson (Appellees), through their wholly-owned company IKE Services, LLC, took out a loan from Appellant BMO Harris Bank, N.A. for $1.3 million. The loan was secured by a mortgage that granted the bank a mortgage lien on ten rental properties in Joliet, Illinois. On October 23, 2010, Debtors defaulted on the loan. Appellant initiated a foreclosure action in Illinois state court and obtained summary judgment against IKE

Services, LLC and the Isaacsons. After the rental properties were sold (Appellant was the high bidder), the result was a deficiency judgment of just over $1 million.

On the morning of May 14, 2013—just hours before a scheduled hearing where the foreclosure court was allegedly scheduled to enter a money judgment against debtors for the $1 million deficiency—Debtors filed for Chapter 13 bankruptcy. The foreclosure court confirmed the judicial sale and entered the deficiency judgment, but did not enter a monetary judgment because of the pending bankruptcy proceeding.

Approximately one month after Debtors filed their petition under Chapter 13, the Trustee moved to dismiss the case because Debtors' scheduled debts exceeded the statutory limit for a Chapter 13 proceeding. Rather than dismissing the case, the Bankruptcy Court converted it to a Chapter 11 proceeding. After a proposed Chapter 11 plan was rejected by the creditors, the Bankruptcy Court again converted the case, this time to a Chapter 7 liquidation proceeding. Appellant refers to this evolution as "litigation gymnastics," arguing that Debtors' filing of a Chapter 13 petition knowing that they were not eligible for Chapter 13 relief combined with their inability to propose a confirmable Chapter 11 plan demonstrate a lack of good faith.

Appellants identify a number of additional factors as evidence of Debtors' bad faith in their efforts to seek bankruptcy relief. First, Appellant claims that Eric and Kimberly Isaacson—both management-level Wal-Mart employees with a combined annual salary (including bonuses) of approximately $263,000 (averaged over the past four years) and with upwards of $1,000,000 in retirement funds [see 8, at 5–6]—have the ability to repay their creditors without the need for bankruptcy protection, and will likely retire as millionaires despite their sought-after bankruptcy status. Second, Appellant argues that Debtors filed their bankruptcy petition only to avoid the judgment entered in the foreclosure case, based on the fact that Debtors have almost no other

consumer debt, such that their indebtedness to Appellant represents more than 99% of their total indebtedness.[1] Third, Appellant argues that Debtors' repeated non-disclosure of their bonuses paid by Wal-Mart during their bankruptcy case, their attempt to classify their Wal-Mart stock as retirement funds, and their initial failure to disclose their actual retirement funds display a lack of candor with the court and their creditors.

### B. Motion to Dismiss under Section 707(a)

In its motion to dismiss in the Bankruptcy Court, Appellant argued that Debtors' bad-faith actions amounted to "cause" for dismissal of Debtors' Chapter 7 petition pursuant to 11 U.S.C. § 707(a) of the Bankruptcy Code. Section 707(a) allows a bankruptcy court, "after notice and a hearing,"[2] to dismiss a Chapter 7 petition "for cause." 11 U.S.C. § 707(a). The statute provides a list of three factors that can constitute "cause," including (1) unreasonable delay by the debtor that is prejudicial to creditors, (2) nonpayment of any fees or charges required under the Bankruptcy Code, and (3) failure of the debtor to file certain information required by the Bankruptcy Code. *Id.* Appellant argues that bad faith (or a lack of good faith) should also be a factor that can justify dismissal.

The Bankruptcy Court held a hearing on Appellant's motion on March 11, 2015. The hearing was brief (the transcript is only five pages), and ended with the Bankruptcy Court denying Appellant's request for dismissal. The transcript reads, in relevant part (with Mr. Takada

---

[1] Since this appeal was filed, Debtors submitted their final proof of claims in the bankruptcy court. In addition to the $1,011,656.13 that Debtors owe to BMO Harris, Debtors also owe a combined $7,595 to (1) the law firm that represented the Isaacsons in the state court action filed by BMO Harris, (2) the Isaacsons' personal accountant, and (3) a credit card bill issued immediately prior to the filing date of the Isaacsons' bankruptcy petition. [See 11, at 6.]

[2] The Court agrees with the Sixth Circuit that "the formalities of a full-blown evidentiary hearing are not required," as long as the parties are given adequate opportunity to present their arguments. *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991).

3

as the Chapter 7 Trustee, Mr. Sukley on behalf of the United States Trustee, Mr. Rubin on behalf of Appellant, and Mr. Lloyd on behalf of Debtors):

> THE COURT: What's the trustee's position?
>
> MR. TAKADA: I have no position.
>
> THE COURT: No position at all?
>
> MR. TAKADA: I had collected some assets in the estate, about [$]48,000. There is a request for an additional [$]50- or [$]60,000 to the particular brokerage account, but other than that – with respect to the motion to dismiss, I have no objection at this time.
>
> THE COURT: Well, the reason why I ask is that if this is an asset estate and you have the ability to distribute proceeds to creditors – Is there any creditor other than the judgment creditor?
>
> MR. TAKADA: There are a couple of smaller creditors that have been scheduled, yes.
>
> THE COURT: Well, why wouldn't you want to exercise your responsibilities as trustee and collect enough money to pay those creditors?
>
> MR. TAKADA: I am attempting to do that and I would like to do that.
>
> THE COURT: Okay. Well, I read this motion and my initial reaction was I would expect the trustee to be opposing it.
>
> MR. TAKADA: Okay.
>
> THE COURT: It is one thing to say that we have a debtor who has sufficient income to pay debts and, therefore, shouldn't be in Chapter 7, and then we get into a debate about whether, because this was not a debtor with primarily consumer debts, Section 707(b) is inapplicable and 707(a) is a question mark as to whether it ought to apply. But that is not the situation here, we've got somebody who has got plenty of assets to pay the debts. And so the fact that he might have engaged in misconduct prior to filing the bankruptcy case I think is irrelevant. The misconduct can be punished by a denial of discharge and by a range of other sanctions that could be imposed. But the question of whether the case should be open, that – there's a reason why bad faith is not a ground for dismissal under 707(a), it's because there are other remedies. And, meanwhile, a person in your position as a trustee can do some good for other creditors.
>
> MR. TAKADA: Understood.
>
> THE COURT: Now if that analysis does not strike you as accurate, I would be happy to hear what you have to say.

| | |
|---|---|
| MR. RUBIN: | Your Honor, we're not alleging misconduct prior to the bankruptcy. |
| THE COURT: | You're alleging any time there is a surplus case in Chapter 7, it ought to be dismissed. |
| MR. RUBIN: | No. What we're stating is that the debtor has sufficient resources to pay not just the smaller creditors, because BMO Harris is about 99 percent – |
| THE COURT: | Let me interrupt you just a second. Any time there is a surplus estate, by definition the debtor has enough resources to pay all the creditors, right? |
| MR. LLOYD: | It is not a surplus. |
| MR. RUBIN: | It is not a surplus estate. |
| MR. LLOYD: | It won't be a surplus estate. |
| THE COURT: | It's not even a surplus estate? |
| MR. RUBIN: | No. |
| THE COURT: | All the more reason. All the more reason. The trustee can liquidate the estate much more efficiently, then the poor creditors who have smaller claims could get a share of whatever proceeds are available. |
| MR. RUBIN: | Well, your Honor – |
| THE COURT: | Now you're arguing on behalf of the major creditor. |
| MR. RUBIN: | That's right. |
| THE COURT: | You obviously have plenty of resources and plenty of reason to pursue the debtor, but the smaller creditors may not. And that's the idea of Chapter 7, we'll distribute the estate ratably among all the creditors. |
| MR. RUBIN: | Your Honor, they can pay the small creditors a hundred percent outside of the bankruptcy. |
| THE COURT: | If they wanted to. |
| MR. RUBIN: | If they wanted to. But that's the whole point of good faith. |
| THE COURT: | I think you're arguing against yourself. What you're saying is that the debtor could make deferential payments to creditors, depending on the debtor's inclination. But that's not what is supposed to happen in bankruptcy. It's supposed to be ratable distribution. |
| MR. RUBIN: | Your Honor – |
| THE COURT: | There is no reason to dismiss this case, that is the long and short of it. |

|            |                                                                 |
|------------|-----------------------------------------------------------------|
|            | Now, Mr. Sukley, if you feel differently, I would be happy to hear from you as well. |
| MR. SUKLEY: | No, your Honor. Our concern was that the trustee is holding funds. |
| THE COURT: | The motion is denied.                                            |

[8-2, at 21–25.]

Two weeks after the hearing, Appellant appealed the Bankruptcy Court's decision to the District Court [1], arguing that the Bankruptcy Court applied the wrong legal test in deciding Appellant's motion to dismiss by failing to determine whether Debtors' actions constituted bad faith. To be clear, Appellant's concern on appeal is not the factual question of whether there was "cause" for dismissal of Debtors' Chapter 7 proceeding, or whether Debtors' actions constituted bad faith.[3] Appellant's only objection relates to the appropriate legal test for assessing a motion to dismiss brought under § 707(a) of the Bankruptcy Code. Appellant asks that the case be remanded to the Bankruptcy Court with instructions to determine whether Debtors' actions constituted bad faith and, if so, to dismiss Debtors' Chapter 7 petition.

## II.     Standard of Review

In a bankruptcy appeal, the court examines the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). Where the bankruptcy code has committed a decision to the discretion of the bankruptcy court—such as dismissal under § 707(a)—that decision is reviewed for abuse of discretion. *Id.* Because Appellant raises only a question of law, the standard of review is *de novo*.

---

[3] In their *amicus curiae* brief in support of Appellant, the United States argues that the case should be reversed and remanded because the Bankruptcy Court "relied on clearly erroneous factual findings." [9, at 7.] Appellant advances a similar fact-based argument in its reply brief. [See 11, at 6.] But the Bankruptcy Court's factual findings are not before the Court; the only issue on appeal is a legal one: whether the Bankruptcy Court erred by failing to make a good-faith determination in assessing a motion to dismiss under § 707(a). As such, the Bankruptcy Court's factual findings (including its alleged misunderstanding of Debtors' relative indebtedness to BMO Harris as compared to other creditors) are not properly before this Court, and will not be reviewed at this time.

## III. Analysis

Appellant has raised one question on appeal:

> Whether the Bankruptcy Court erred when it denied BMO Harris's Motion to Dismiss without determining whether Eric Isaacson and Kimberly Isaacson (the "Isaacsons") filed their Bankruptcy Petition in "good faith," as required under 11 U.S.C. § 707(a)?

[8, at 6.] The question of "[w]hether a chapter 7 case can be dismissed on bad faith grounds under section 707(a) is one of the older debates in bankruptcy law," *In re Adolph*, 441 B.R. 909, 911 (Bankr. N.D. Ill. 2011), that has resulted in a split of authority amongst the circuit courts. On Appellant's side are the Third, Sixth, and Eleventh Circuits, and on Debtors' side are the Eighth and Ninth Circuits. See *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991); *In re Huckfeldt*, 39 F.3d 829, 831–33 (8th Cir. 1994); *In re Padilla*, 222 F.3d 1184, 1190–94 (9th Cir. 2000); *In re Tamecki*, 229 F.3d 205, 207–08 (3d Cir. 2000); *In re Piazza*, 719 F.3d 1253, 1262–71 (11th Cir. 2013).

At the time of the filing of this appeal, the Seventh Circuit had not weighed in on this issue. That has since changed. See *In re Schwartz*, 799 F.3d 760 (7th Cir. 2015). In that opinion, the Seventh Circuit sided with the Sixth, Eighth, and Eleventh Circuits in holding that the "for cause" provision in § 707(a) "embrace[s] conduct that, while not a violation of required procedures, avoids repayment of debt without an adequate reason." *Id.* at 763.

Interestingly, the Eighth Circuit (cited favorably in *In re Schwartz*) is traditionally viewed as being on Appellee's side of the split. But to be clear, **all** of these circuits allow for bad-faith dismissals under § 707(a) in at least some contexts. See, *e.g.*, *In re Huckfeldt*, 39 F.3d at 832 ("[S]ome conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith."). The issue at the heart of the circuit split is not the binary question of whether § 707(a) can ever permit a bad-faith dismissal (although some courts frame it that way); instead,

7

the issue is a more-nuanced one that concerns how broadly courts can interpret the "for cause" provision in § 707(a).

### A. Dismissal "For Cause" under Section 707(a)

The purpose of the Bankruptcy Code "is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (citation and internal quotation marks omitted). Bankruptcy judges are given broad discretion to uphold this central tenet of the Code, which includes the statutory power to take any action that is necessary or appropriate "to prevent an abuse of process." 11 U.S.C. § 105(a).[4] This authority allows bankruptcy judges "to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Marrama*, 549 U.S. at 374–75.

With these general principles in mind, the Court next reviews the statutory language at issue:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> >
> > (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> >
> > (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

---

[4] Title 11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 707(a). In reviewing the statutory text, the Seventh Circuit made several observations that are relevant here. First, while the statute provides three enumerated factors than can constitute "cause" for dismissal, the "including" language should be read as "including, but not limited to," such that the list of factors is illustrative, not exhaustive. See *In re Schwartz*, 799 F.3d at 763 ("[T]he fact that the three grounds are introduced by 'including' tugs against the argument that they are exclusive, or that they exhaust the statute."); *In re Zick*, 931 F.2d at 1126 ("We are satisfied that the word 'including' is not meant to be a limiting word."); *In re Jakovljevic-Ostojic*, 517 B.R. 119, 126 (Bankr. N.D. Ill. 2014) ("The enumerated grounds for a 'for cause' dismissal are not exhaustive, but merely illustrative." (citations omitted)); 11 U.S.C. § 102(3) (defining "including" to be "not limiting").

Second, certain courts have argued that the three examples are based on "technical and procedural grounds,"[5] and even though § 707(a) provides a non-exhaustive list of grounds for dismissal, the "for cause" provision "is best read as limited to technical and procedural violations of the Code." *In re Adolph*, 441 B.R. 909, 911 (Bankr. N.D. Ill. 2011) (citing *United States v. Taylor*, 620 F.3d 812, 814 (7th Cir. 2010) (noting that under the doctrine of *ejusdem generis*, "a statutory list of examples * * * can be a clue to the statute's intended scope" since "[t]he examples are a substitute for or supplement to a definition")); see also *In re Padilla*, 222 F.3d at 1192. But the Seventh Circuit flatly rejected this argument, claiming that "[i]t would make no sense to limit 'for cause' to procedural defects in the bankruptcy petition." *In re Schwartz*, 799

---

[5] Some courts, including the Seventh Circuit, have disagreed with the classification of the three enumerated examples of cause as "technical and procedural." *In re Schwartz*, 799 F.3d at 763 ("And as for whether the three grounds specified in section 707(a) are procedural, two are not: the first, which punishes unreasonable delay, by a debtor who has filed a bankruptcy petition, in taking steps necessary to the administration of the bankrupt estate; and the second, which involves nonpayment of fees, mainly filing fees." (citing 6 *Collier on Bankruptcy* ¶ 707.03 (16th ed. 2015))); see also; *In re Piazza*, 719 F.3d at 1263 (citing *McDow v. Smith*, 295 B.R. 69, 74–75 (E.D. Va. 2003)).

9

F.3d at 763 ("Suppose the debtor can pay all or some of his debts without hardship yet refuses without any plausible excuse.").

Importantly, while the Seventh Circuit adopted the rationale of the circuit-court cases holding that § 707(a) allows for "bad faith" dismissals, the court shied away from adopting any formalistic "bad faith" analysis. *In re Schwartz*, 799 F.3d at 763 (noting that the cases within the circuit split "often use 'bad faith' to denote 'cause' for dismissing a bankruptcy petition for other than procedural reasons," but commenting that "we can't see what is gained by the terminological substitution"). Instead, the court held that § 707(a) is not limited to procedural dismissals, and that "an unjustified refusal to pay one's debts is a valid ground under 11 U.S.C. § 707(a) to deny a discharge of a bankrupt's debts." *In re Schwartz*, 799 F.3d at 764. The court specifically rejected the notion that the bankruptcy court must make a determination regarding bad faith. *Id.* ("[T]here's no need to consider whether [debtors'] conduct amounts to 'bad faith.'"). The Seventh Circuit expressly rejected the Sixth Circuit's bad-faith test, which says that dismissal under § 707(a) is appropriate "only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *In re Zick*, 931 F.2d at 1129. The Seventh Circuit referred to this test as "not the happiest formula," pointing out potential inconsistent outcomes that could result from its application. *In re Schwartz*, 799 F.3d at 764 ("If it is read literally, then 'concealed or misrepresented assets and/or sources of income' are grounds for dismissal only if coupled with 'excessive and continued expenditures' and with the other terms in the quoted passage; nor is it obvious that failure to repay 'a large single debt' is worse behavior than a gratuitous failure to repay multiple debts."). The bottom line is that bankruptcy courts have discretion to dismiss

cases for "cause" under § 707(a) wherever there is an unjustified refusal to pay one's debts (or, presumably, for any other number of non-procedural reasons), regardless of whether the debtors' conduct amounts to "bad faith."

### B. Bankruptcy Court's Analysis

In denying Appellant's motion to dismiss, the Bankruptcy Court said that "bad faith is not a ground for dismissal under 707(a)." [8-2, at 23.] While bad faith is not an explicit ground for dismissal under § 707(a), as explained herein, bad faith—or, more specifically, any unjustified refusal to pay one's debt, whether in bad faith or not—can amount to "cause" for dismissal. By rejecting the possibility that certain bad-faith acts can ever justify dismissal under § 707(a), the Bankruptcy Court applied the wrong legal standard. To be clear, the Bankruptcy Court was not required to engage in a full-blown determination as to whether Debtors acted in bad faith. However, the Bankruptcy Court's stance that bad faith can *never* constitute "cause" for dismissal under § 707(a) is contrary to law after *In re Schwartz*.

Arguably the Bankruptcy Court's statement could be classified as dicta, as the court also said that Debtors' misconduct "c[ould] be punished by a denial of discharge and by a range of other sanctions that could be imposed." [8-2, at 22–23.] On one hand, if the Bankruptcy Court concluded that "cause" for dismissal did not exist because Debtors' misconduct in this instance was best handled by other remedial measures, this would most likely constitute an appropriate exercise of discretion. On the other hand, if the Bankruptcy Court was making the point that bad faith is *never* a ground for dismissal under § 707(a) *because* debtor misconduct can be punished by a denial of discharge and by a range of other sanctions, this statement would be contrary to the law established in *In re Schwartz*. Because the Court lacks certainty as to whether the Bankruptcy Court considered that an unjustified refusal to pay one's debts can be a cause for

11

dismissal under § 707(a), the Court must vacate the Bankruptcy Court's order and remand the case for further consideration in accordance with this order and with the Seventh Circuit's opinion in *In re Schwartz.* See *In re Zick*, 931 F.2d at 1128 ("The factors relied on by the bankruptcy court are essential in appellate review, and should be set out in the bankruptcy court's decision.").

As a final word, the Court acknowledges the seriousness of bad-faith bankruptcy filings in all contexts, including Chapter 7. See Brief of the United States as Amicus Curiae Supporting Reversal [9, at 8] ("Last year, United States Trustees filed 2,620 motions under section 707(a) to dismiss cases on a variety of grounds, including bad faith."). The Court also recognizes that Debtors' creditors (of which Appellant comprises 99.25%) will likely receive a return of less than a nickel on every dollar claimed against Debtors' bankruptcy estate [11, at 3], while Debtors' will likely continue earning hundreds of thousands of dollars each year while maintaining substantial retirement funds. And the Court recognizes that other courts in this district have dismissed Chapter 7 petitions under § 707(a) under nearly identical fact patterns. See *In re Collins*, 250 B.R. 645 (Bankr. N.D. Ill. 2000) (debtor filed for bankruptcy two weeks before judgment was entered against him for $525,000, where debtor had $2.3 million in exempt assets and was admittedly trying to avoid a single creditor). While bankruptcy courts maintain significant discretion in addressing debtor misconduct, and while dismissal and bad faith should be assessed on a case-by-case basis, the importance of addressing allegations of bad faith in a fulsome manner is necessary, lest we "create[] the appearance that such an abusive practice is implicitly condoned by the [Bankruptcy] Code." *In re Piazza*, 719 F.3d at 1262.

**IV.	Conclusion**

For the foregoing reasons, the Bankruptcy Court's denial of BMO Harris Bank, N.A.'s motion to dismiss the Debtors' Chapter 7 bankruptcy petition pursuant to 11 U.S.C. § 707(a) is vacated and the case is remanded for reconsideration in accordance with this order and with the Seventh Circuit's recent opinion in *In re Schwartz*, 799 F.3d 760 (7th Cir. 2015).

Dated: November 2, 2015

_____
Robert M. Dow, Jr.
United States District Judge